IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CRITERION SUPPLY, INC. d/b/a INTERIOR LOGIC GROUP<br><br>Plaintiff,<br><br>v.<br><br>LEONARD PREVITO and TIM MEISSNER, d/b/a M&W FLOORING<br><br>Defendants. | ) | CIVIL ACTION NO. |

## **COMPLAINT**

Plaintiff, Criterion Supply, Inc. d/b/a Interior Logic Group ("ILG" or "Plaintiff"), by and through its attorneys, brings this Complaint against Defendants Leonard Previto ("Previto") and Tim Meissner ("Meissner"), d/b/a M&W Flooring ("M&W") (collectively "Defendants"), and in support states:

## **NATURE OF THE ACTION**

1. This action arises from Previto's violation of his post-employment obligations to ILG which are contained in the Non-Competition, Non-Solicitation & Confidentiality Agreement (the "Agreement"), which

Previto executed on October 8, 2018. In addition, as described in further detail below, Previto misappropriated ILG's trade secrets and confidential information, and used such trade secrets and confidential information to provide himself and M&W with an unfair competitive advantage.

2. Defendant M&W has knowingly accepted the benefits of Previto's wrongful conduct, and has directly facilitated Previto's breach of his legal obligations to ILG, which has caused harm and significant damages to ILG. To stop and prevent ongoing irreparable harm arising from Defendants' conduct, ILG seeks preliminary and permanent injunctive relief, as well as monetary damages and other available relief.

## PARTIES

3. Plaintiff is an Oregon corporation, with its headquarters located in Oregon. Plaintiff is licensed and authorized to do business within the state of Georgia.

4. ILG is a leading provider of floor covering products in multi-family homes and various other industries, such as healthcare and lodging.

5. Previto is a resident of Georgia. He may be served personally at his residence, which is located at 207 Mountain Brook Drive, Cumming, Georgia 30040.

6. Previto was employed by ILG as an Account Executive beginning in October 2018 until his termination in July 2019. Previto's sales territory included the Atlanta metropolitan area. As Account Executive, Previto was exposed to and entrusted with ILG's confidential and proprietary information. Previto breached his duties to ILG by misappropriating the confidential and proprietary information with which he was entrusted.

7. M&W is a sole proprietorship owned and operated by Meissner, with its principle place of business located in Norcross, Georgia. Meissner may be served personally at his residence, which is located at 4702 Brownsville Road, Powder Springs, Georgia, 30127.

8. Previto began working for M&W, a direct competitor of ILG, immediately after his termination. Previto performs similar duties and activities as he did in his position at ILG, and is competing with ILG by soliciting and selling to its customers. Accordingly, the improper use of ILG's trade secrets and confidential information, as well as the solicitation of ILG's clients, is significantly damaging to ILG's ability to lawfully compete.

## JURISDICTION AND VENUE

9. Jurisdiction is proper in this district pursuant to 28 U.S.C. §§ 1331 and 1367 because ILG asserts a cause of action under federal law

pursuant to the Defend Trade Secrets Act ("DTSA"), Pub. L. No. 114-153, 130 Stat. 376, which was passed into law on May 11, 2016.

10. Pursuant to 28 U.S.C. § 1367, the causes of action alleged by ILG under Georgia law "are so related to" the DTSA claim "that they form part of the same case and controversy under Article III of the United States Constitution."

11. Venue is proper in this district under 28 U.S.C. 1391 (b) and (c) because the alleged harm and breach occurred, and continues to occur, in this District.

## FACTS COMMON TO ALL COUNTS

### Plaintiff Zealously Protected Its Confidential and Proprietary Information

12. Because ILG has worked for years to develop and refine its industry knowledge, customers, and sales techniques, it zealously protects its confidential information through encryption, password protection and only offering passwords and log-in credentials to certain employees. In addition, employees are provided access to certain files on a limited "need-to-know" basis.

13. ILG maintains and adheres to strict confidentiality policies that require all employees with access to sensitive information to sign agreements

in which they promise they will not use or disclose confidential or proprietary information for purposes other than the business of ILG. Only employees of ILG or others subject to confidentiality agreements have authorized access to ILG's confidential or proprietary information.

14. The measures ILG takes to protect the confidentiality of information include, but are not limited to, steps such as ensuring that each individual laptop issued to or desktop used by a company employee is password protected and requires multiple log-ins to access the application and software programs. Employees of ILG have varying levels of access to proprietary software, applications and servers, all of which is based on whether they have a legitimate business need to access that level of information. Similarly, mobile devices, including iPhones, Androids and tablets that are used to access ILG information are also required to be password protected.

**Previto's Employment with Plaintiff**

15. Previto was employed by ILG from approximately October 2018 until his termination in July 2019.

16. On October 8, 2018, Previto executed the Agreement relating to non-competition, non-solicitation of Plaintiff's clients, and confidentiality. (Exhibit A).

17. In consideration for his employment by Plaintiff, Previto agreed, among other things:

> Employee agrees that during the period he/she is employed by Company, or its successors, under this Agreement, and for a period of (1) year following the termination of Employee's employment, Employee will not participate in (as hereinafter defined in this section) any other business or organization which competes with the business of Company in the sales and installation of floor covering within the standard Metropolitan Statistical Area (MSA) in which Company serves Customers.

Ex. A at Paragraph 1.

18. Previto further agreed:

> For purposes of this section, the term "participates in" shall mean "directly or indirectly for Employee's own benefit or for, with or through any other person, form or corporation: own, manage, operate, control, loan money to or participate in the ownership, management, operation or control of, or be connected as a director, officer, employee, partner, consultant, agent, independent contractor or otherwise with, or acquiesce in the use of Employee's name in.

Ex. A at Paragraph 1.

19. Previto further agreed:

> Employee will not, at any time during the period of employment, or for one (1) year following the termination of employment, directly or indirectly solicit or interfere with, or endeavor to entice away from

> Company, or its successors, any of its suppliers or customers within any Metropolitan Statistical Area (MSA) in which Company serves customers.

Ex. A at Paragraph 2.

20. Previto further agreed:

> Employee acknowledges that all confidential information which Employee may now possess, may obtain during or after the employment period, or may create prior to the end of the period that he/she is employed by Company under this Agreement or otherwise relating to the business of Company or of any customer or supplier of Company shall not be used by Employee or published, disclosed or made accessible by Employee to any other person, firm or corporation without the prior written consent of Company, except (i) as required by law or (ii) in the business and for the benefit of Company during the employment period. Employee shall return all physical and electronic evidence of such confidential information to Company prior to or at the termination of Employee's employment.

Ex. A at Paragraph 3.

21. Previto further agreed:

> As used in this section "confidential information" shall mean any information except that information which is generally known by Company's principal competitors, generally available to the public, part of Employee's general knowledge prior to employment by Company, or disclosed after the employment period to Employee with proprietary restriction by a third party who rightfully possesses the information without confidential or proprietary restriction.

Ex. A at Paragraph 3.

22. As an Account Executive at ILG, Previto's job duties included, but were not limited to, responsibility for profitably growing sales to achieve

yearly sales goals, by maintaining and increasing opportunities with existing core customers and new prospect accounts, among other things.

23. To perform his job duties, Previto had access to ILG's customer and strategic information, and other confidential and proprietary information, all of which information has commercial value to ILG.

**Previto Was Provided Access to Plaintiff's Confidential and Proprietary Information Through His Employment with Plaintiff**

24. Previto had access to and was entrusted with ILG's confidential and proprietary information, including, but not limited to, customer and strategic information.

25. ILG spent substantial time and money developing the confidential and proprietary information to which Previto had access while working at ILG.

26. ILG's confidential and proprietary information to which Previto had access and used in furtherance of his job duties for ILG included, but is not limited to, customer and prospective customer contact information, information regarding customer preferences, product information, marketing information, pricing and structure terms, incentive terms, and dealer and other agreements.

**Previto's Termiantion, Misappropriation of Trade Secrets, Solicitation of ILG's Clients**

27. ILG terminated Previto's employment on or about July 9, 2019.

28. Shortly after his employment with ILG ended, Previto began working at M&W, a direct competitor of ILG.

29. On or about August 20, 2019, ILG, sent Previto a cease and desist letter warning him not to violate the restrictive covenants he signed with ILG.

30. On or about October 15, 2019, ILG, sent M&W a cease and desist letter making it aware of Previto's post-employment obligations to ILG.

31. After Previto began his employment with M&W, Previto contacted ILG's clients, including Matrix Residential, LLC ("Matrix"), and diverted business to M&W.

32. Previto used his knowledge of ILG's confidential information and trade secrets to compete against ILG, to aid M&W, and to violate the Agreement, the trade secret statutes, and his common law duties owed to ILG.

33. Previto has directly or indirectly solicited ILG's customers for or on behalf of M&W, including Matrix and others not known to ILG.

**COUNT I**
**Violation of the Defend Trade Secrets Act, 18 U.S.C. §1836**
**(Against Both Defendants)**

34. ILG repeats and reasserts the allegations set forth in paragraphs 1 through 33 of the Complaint and incorporates them herein by reference.

35. During his employment with ILG, Previto had access to confidential and proprietary information.

36. ILG's confidential and proprietary information are trade secrets under 18 U.S.C. § 1839(3) because they derive independent economic value, actual or potential, from not being generally known to, and not readily ascertainable through proper means, by competitors of ILG and because ILG has taken reasonable measures to keep such information secret.

37. As more fully described above, ILG takes reasonable measures to protect the secrecy of such information. These measures include confidentiality agreements and limitations on dissemination of information on a need-to-know basis.

38. Previto knew he had a duty to maintain the secrecy of ILG's trade secrets due, in part, to his acknowledgement of his duty to maintain the secrecy of confidential information under the Agreement.

39. Previto had a duty not to disclose or use misappropriated trade secrets for the purpose of gaining a competitive advantage in the marketplace.

40. After the termination of his employment relationship with ILG, Previto misappropriated ILG's trade secrets by wrongfully obtaining, compiling, maintaining, and/or distributing documents and/or electronically stored information that includes ILG's trade secrets, including customer and prospective customer contact information, product information, pricing and business strategy information, marketing customer needs and preferences, among other things.

41. Previto has used ILG's trade secrets to aid himself and M&W in improperly soliciting ILG's customers.

42. Defendants' actions constitute a violation of 18 U.S.C. § 1836, *et seq.*

43. Defendants' misappropriation of ILG's trade secrets was willful and malicious under 18 U.S.C. § 1836(b)(3)(C).

44. Defendants have been unjustly enriched as a proximate result of their misappropriation and use of ILG's trade secrets.

45. ILG lacks an adequate remedy at law and is entitled to preliminary and permanent injunctive relief enjoining Defendants' unlawful use and misappropriation.

46. To the extent that Defendants have already provided ILG's trade secrets or other confidential information to third parties, those parties should also be ordered to return and/or destroy that information.

47. ILG is further entitled to actual damages and disgorgement of amounts by which Defendants were unjustly enriched, in amounts to be proven at trial, as well as punitive and/or exemplary damages.

**COUNT II**
**Misappropriation of Trade Secrets**
**(Against Defendant Previto)**

48. ILG repeats and reasserts the allegations set forth in paragraphs 1 through 47 of the Complaint and incorporates them herein by reference.

49. As a result of his working relationship with ILG and performance of job responsibilities for ILG, Previto was given access to ILG's trade secrets, including, but not limited to customer and prospective customer contact information, product information, pricing and business strategy information, marketing customer needs and preferences, among other things.

50. ILG has taken reasonable measures and precautions to maintain the secrecy of its trade secrets and confidential and proprietary information, including confidentiality agreements and limitations on dissemination of information on a need-to-know basis.

51. ILG derives economic value from the confidential and proprietary information entrusted to Previto by ILG. Such information is not generally known or readily ascertainable by proper means by other persons who can obtain economic value from its disclosure and use, including ILG's competitors. Moreover, the information is the subject of significant efforts to maintain its secrecy, as described above.

52. Previto has misappropriated, retained, and wrongfully used ILG's trade secrets for his own self-interest and for the benefit of his new employer to compete unfairly with ILG in violation of the Georgia Trade Secrets Act, O.C.G.A. § 10-1-760 *et seq.*

53. Previto has misappropriated and wrongfully retained ILG's trade secrets that he obtained in the course of his employment with ILG, breaching the duties he owed and still owes to ILG, to refrain from disclosing ILG's confidential information.

54. Previto has obtained ILG's trade secret information by improper means, including the exploitation of his position of trust with ILG.

55. Previto's misappropriation of ILG's trade secrets was and is willful and malicious.

56. Previto has misappropriated ILG's trade secret information and materials for his own improper use, and the use of M&W, and any others with whom he is acting in concert, to the detriment of ILG.

57. Furthermore, Previto has been unjustly benefited as a result of his misappropriation.

58. As a result of Previto's misappropriation and unlawful use of ILG's trade secrets, ILG has suffered damages in the form of actual losses caused by the misappropriation, including, but not limited to, lost profits, loss of competitive advantage, and the diminution and destruction of the value of its trade secrets. Furthermore, M&W has been unjustly enriched as a result of Previto's misappropriation.

59. ILG is entitled to injunctive relief: (a) restraining and prohibiting Previto and M&W from retaining, disclosing, disseminating, using, or otherwise misappropriating ILG's trade secrets and unfairly competing with

ILG by use of such trade secrets; and (b) compelling Previto, M&W, and Meissner to return the trade secrets (and all reproductions of same) to ILG.

60. ILG is further entitled to actual damages and disgorgement of amounts by which Previto and M&W were unjustly enriched, in amounts to be proven at trial, as well as exemplary damages.

61. ILG is further entitled to its fees and costs pursuant to O.C.G.A. § 10-1-764.

**COUNT III**
**Breach of Non-Competition, Non-Solicitation & Confidentiality Agreement**
**(Against Defendant Previto)**

62. ILG repeats and reasserts the allegations set forth in paragraphs 1 through 61 of the Complaint and incorporates them herein by reference.

63. Previto entered into a valid contract with ILG when he signed the Agreement, which was based on sufficient consideration.

64. ILG has one or more legitimate business interests justifying enforcement of the restrictive covenants contained in the Agreement, including, but not limited to, (a) prohibiting Previto from competing in another business or organization which competes with the business of ILG in the sales and installation of floor covering; (b) prohibiting Previto from soliciting or interfering with ILG's relationships with customers; (c)

prohibiting Previto from interfering with ILG's relationships with its employees; and (d) prohibiting Previto from using ILG's confidential information.

65. The restrictions contained in the Agreement are reasonably necessary to protect the legitimate business interests identified in the above paragraph.

66. Among other things, the Agreement prohibits Previto for a period of one (1) year from participating in any other business or organization which competes with ILG in the sales and installation of floor covering within the standard Metropolitan Statistical Area (MSA) in which ILG serves customers.

67. Previto violated his contractual obligations in the Agreement through his employment with M&W.

68. Among other things, the Agreement prohibits Previto for a period of one (1) year from directly or indirectly soliciting or interfering with, or endeavoring to entice away from Company, or its successors, any of its suppliers or customers. In addition, the Agreement prohibits Previto from using and/or disclosing ILG's confidential information.

69. Previto violated his contractual obligations in the Agreement by improperly soliciting ILG's customers and by using and/or disclosing ILG's trade secrets and confidential business information.

70. ILG has satisfied all of its contractual obligations to Previto.

71. ILG has been and continues to be damaged by Previto's improper and unlawful actions in breaching the Agreement.

72. ILG is entitled to an injunction restraining Previto, and all others acting in concert with him, including, but not limited to, M&W from engaging in activities that violate the contractual obligations undertaken by Previto in the Agreement.

73. ILG is also entitled to an award of damages incurred as a result of Previto's material breaches of his contractual obligations under the Agreement, in an amount to be determined at trial.

**COUNT IV**
**Conversion**
**(Against All Defendants)**

74. ILG repeats and reasserts the allegations set forth in paragraphs 1 through 73 of the Complaint and incorporates them herein by reference.

75. Prior to and/or following the end of Previto's employment relationship with ILG, Previto intentionally misappropriated certain trade

secrets and confidential business information that is ILG's property, in order to use such property to unfairly compete with ILG.

76. Previto and M&W have, without authority or justification, assumed and exercised the right of ownership of ILG's property, as described above, and their actions have concurrently denied ILG access to its own property.

77. The conversion of ILG's property by Defendants was and is willful and malicious.

78. ILG has been damaged as a proximate result of the conversion of its property by Defendants.

## COUNT V
## Tortious Interference with Contractual and Business Relations
## (Against All Defendants)

79. ILG repeats and reasserts the allegations set forth in paragraphs 1 through 78 of the Complaint and incorporates them herein by reference.

80. ILG has valid contracts and business relationships with its customers with which Defendants have improperly interfered.

81. At all relevant times, Defendants knew of ILG's contracts and/or business relationships with its customers.

82. Defendants are intentionally interfering with such contracts and/or business relationships by soliciting or attempting to solicit or otherwise divert ILG's customers.

83. Defendants have used wrongful means, including use of ILG's trade secrets and confidential and proprietary information, to interfere with ILG's customers.

84. Defendants lack justification for their use of wrongful means to intentionally interfere with ILG's customers.

85. Defendants have knowingly and intentionally provided material assistance to and/or conspired with one another in, among other things, engaging in actions that constitute tortious interference with ILG's contracts and/or business relationships with customers.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff ILG respectfully requests that the Court enter an Order and Judgment in its favor and against Defendants Previto and M&W, and award ILG the following relief:

(A) A preliminary and permanent injunction prohibiting Defendant Previto from further taking, acquiring, disclosing, using in any way, otherwise misappropriating, or attempting to do any such thing with ILG's property,

including, but not limited to, ILG's trade secrets and confidential business information;

(B) A preliminary and/or permanent injunction prohibiting Defendants from competing unfairly with ILG based in any way on their knowledge and/or use of ILG property or trade secrets;

(C) A preliminary and/or permanent injunction prohibiting Defendant Previto from engaging in activities that violate his contractual obligations to ILG contained in the Agreement, including his solicitation of ILG's customers;

(D) A preliminary and/or permanent injunction prohibiting Defendants from wrongfully interfering with ILG's contracts and/or business relationships with its customers;

(E) A preliminary and/or permanent injunction compelling Defendants to return and restore all of ILG's property (and all reproductions thereof) to ILG;

(F) Monetary damages, including, but not limited to, compensatory damages, disgorgement of amounts by which Defendants were unjustly enriched, and exemplary and/or punitive damages;

(G) Pre and post-judgment interest;

(H) ILG's attorneys' fees and costs and expenses incurred in conjunction with this suit; and

(I) Such other and further relief as the Court deems just and proper.

DATED: November 19, 2019

Respectfully submitted,

*<u>/s/ Christopher M. Caiaccio</u>*
Christopher M. Caiaccio
Georgia Bar No. 102002
chris.caiaccio@ogletreedeakins.com
Katherine H. Krouse
Georgia Bar No. 514298
katie.krouse@ogletree.com

OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
191 Peachtree Street, N.E. - Suite 4800
Atlanta, GA 30303
Telephone: (404) 881-1300
Facsimile: (404) 870-1732

*Attorneys for Plaintiff*

40618221.1